105 P.2d 472

## FULLER v. CROCKER et al.

No. 4457.

Supreme Court of New Mexico.

Sept. 4, 1940.

Edward C. Wade, Jr., and McBroom & Clayton, all of El Paso, Tex., for appellants.

Fred C. Knollenberg and David J. Smith, both of El Paso, Tex., for appellee.

ZINN, Justice.

This is a suit in equity, instituted by plaintiff Pendleton R. Fuller, appellee here, to impress a trust resulting from a contract dated December 27, 1928, or, in the alternative, to obtain specific performance of the contract and appointment of a receiver and the sale of real estate involved in the suit, to-wit: a tract of land containing 83.50 acres in Dona Ana County, New Mexico. Final decree was entered on October 8, 1938, in favor of plaintiff. This appeal by defendants followed.

The El Paso Commercial Company, a corporation, defendant in the court below, was dismissed as a party defendant, having acted merely as agent and having no interest in the land involved nor in this appeal. The remaining defendants below, appellants here, are Mrs. Marie Alice Kerber Crocker, Mrs. Louise Kerber Logan, Mrs. Ruth Kerber Kemler, and Ralph W. Crocker.

The case was submitted to the court on an agreed statement of facts plus the testimony of the plaintiff. From these we find the principal facts essential to decision of the case to be as follows:

On December 27, 1928, Fuller and Mrs. Alice Kerber claimed adjacent tracts of land of the United States Public Domain, which claims overlapped and formed an area in conflict amounting to 27.10 acres. At that time it was not known whether the tracts of land claimed by Fuller and Mrs. Kerber, including the tract in conflict were situated in New Mexico or Texas. The exact location of the boundary between the two states was then being litigated in the United States Supreme Court. The case was ultimately settled on March 23, 1931. See New Mexico v. Texas, 283 U.S. 788, 51 S.Ct. 357, 75 L.Ed. 1415. The Kerber tract was originally part of the Canutillo grant of El Paso County, Texas, while the Fuller tract was originally considered part of the Refugio Colony Grant of Dona Ana County, New Mexico.

On December 27, 1928, the Kerbers and Fuller entered into a written contract, the basis of this suit, "to settle, adjust and compromise all matters concerning the conflict." In accordance with the contract Fuller conveyed his tract to Mrs. Alice Kerber, and she agreed to procure patent or patents for the combined tract. It was agreed that upon procuring the patents, the tract claimed by her, including the area in conflict, would be sold, and each of the parties would be entitled to one-half of the proceeds from sale of the area in conflict. The patents have since been procured, and

the plaintiff charges that the defendants now refuse to abide by the contract.

Fuller's title to his tract of land originates with Daura V. Peacock. Prior to October 13, 1914, Peacock claimed a tract in the United States Public Domain containing 36.92 acres and known and designated as PC 80, Tract 1, Daura V. Peacock.

The defendants trace their title through Mrs. J. J. Mundy, though on March 17, 1914, Charles A. Kerber and Alice Kerber, husband and wife, and Ralph W. Crocker and Marie Crocker, had conveyed this same tract to Mrs. Mundy, describing the tract as containing 84.48 acres. Mrs. Mundy claimed a tract adjacent to and overlapping the Peacock tract containing 83.50 acres and known as Tract 204. The two claims overlapped and formed the area in conflict, amounting to 27.10 acres, which is the area here involved.

On October 13, 1914, Peacock filed his application with the U. S. Land Office at Las Cruces for a patent, number 010060, pursuant to Act of Congress, approved Feb. 3, 1911, 36 Stat. 896, commonly known as the Small Holdings Act. This application was contested by Mrs. Mundy. The Register of the United States Land Office held a hearing on Mrs. Mundy's contest, and decided the issues in favor of applicant Peacock. Mrs. Mundy appealed from that decision to the Commissioner of the General Land Office at Washington, D. C. On November 26, 1915, the Commissioner of the General Land Office suspended further action on the contest until the determination of

the boundary between Texas and New Mexico. While that contest appeal was still pending, Peacock conveyed all his right, title and interest in his tract to Fuller. Likewise, Mrs. Mundy conveyed her tract to Charles A. Kerber and defendant Ralph W. Crocker. On January 22, 1925, Fuller conveyed that portion of his tract outside the boundaries of the area in conflict to Pablo Viramontes. This latter conveyance to Viramontes left Fuller with an interest only in the disputed area.

While the record is silent as to how or when Mrs. Alice Kerber acquired the interest of Mrs. J. J. Mundy, it does show in the contract dated December 27, 1928, that she claimed and represented that she owned that interest. On that date Mrs. Kerber, joined by her husband, Charles A. Kerber, entered into the contract with Fuller upon which this suit is predicated. This contract also provided that after patent or patents were issued and titles perfected they would convey to Pablo Viramontes the Fuller lands not in conflict with the Kerber lands, and that the area in conflict as well as the Kerber tract not in conflict with the Fuller lands would be sold at the best price obtainable at a per acre price, to be sold as an entire tract, or in such way and manner as to bring the best price for the entire tract of eighty acres, more or less, and that Fuller or his assigns should receive in cash one-half of the per acre price of that portion of the lands in conflict, and in the event the agreement could not be carried out by reason of the failure or inability to procure patents, or to have the title to the

lands made marketable, then, in that event, the parties would restore each to the other the status and conditions of the properties as they existed prior to entering into the contract, and mutually named the firm of Loomis and Kirkland their agents and attorneys for the purpose of carrying out the terms of the contract.

On December 7, 1929, Mrs. Alice Kerber amended patent application 010060 so as to include both claims and filed it with the Commissioner of the General Land Office. On March 23, 1931, the Supreme Court of the United States approved the Gannett Survey (see New Mexico v. Texas, supra) and it was determined that all of the land involved in this case was in Dona Ana County, New Mexico.

On May 18, 1931, Mrs. Alice Kerber died and her three daughters, defendants Mrs. Marie Alice Kerber Crocker, Mrs. Louise Kerber Logan and Mrs. Ruth Leah Kerber Kemler, as heirs, devisees and executrices of the estate of Alice Kerber, deceased, succeeded to all their mother's rights and liabilities under the contract.

On June 16, 1934, the United States Congress passed an Act permitting claimants under Texas titles, but whose claims were found to be in New Mexico after the Gannett Survey, to apply for and patent those lands. 48 Stat. 975. Thereupon, on April 1, 1935, the defendants without notice to Fuller filed application for patent covering not only their land but also the area in conflict.

On July 3, 1934, the Commissioner of the General Land Office held Mrs. Alice Kerber's amended application for rejection with the right to appeal to the Secretary of the Interior within thirty days. On July 26, 1934, Frank Wells Brown, an officer of the El Paso Commercial Company, wrote a letter to Charles R. Loomis, of Loomis & Kirkland, attorneys and agents for the parties to the contract of compromise and settlement, requesting Loomis to notify Fuller that he, Brown, could not advise the Kerbers to make this appeal, but if Fuller desired to do so at his own expense and initiative, that such would be his privilege. Fuller thereupon paid the firm of Loomis and Kirkland a fee to make the appeal, and on August 14, 1934, such appeal to the Secretary of the Interior, signed by Loomis and Kirkland, was filed. The appeal, however, was limited to the Viramontes tract and expressly excluded the area in dispute.

On July 11, 1935, the Secretary of the Interior rendered his decision on the appeal, affirming the decision of Commissioner of the General Land Office to the extent of dismissing the contest of Mrs. Mundy against Peacock, and reversing it as to the rejection of the application of Peacock and remanding the case for further action in accordance with his view. This decision reads in part:

"The Act of June 16, 1934, 48 Stat. 975, referred to by the Commissioner, has no application as to the land which was thought to be part of the Refugio Colony

Grant and the appeal relates to no other land. Title thereto from the State of Texas was not asserted. There was no appeal from the dismissal of the protest of Mrs. J. J. Mundy, so all that is now involved is that which is based on Peacock's filing.

"The executive order of June 4, 1928, referred to in the Commissioner's decision, is subject to any valid existing rights. It is true that Peacock obtained a deed, showing a valuable consideration, from one Trimmer, who had claimed title by deed since 1889. It cannot be said that Peacock abandoned the land, for it is shown that he conveyed by warranty deed to Fuller.

"The circumstances have been unusual. On account of the dispute between the States of New Mexico and Texas, all action was withheld for several years. There was consequently a good excuse for the failure of Peacock to make final proof. But no good reason is seen why it may not now be made."

On June 16, 1936, the Commissioner of the General Land Office issued a letter authorizing the Register at Las Cruces, New Mexico, to issue final certificate on the defendant's application for a patent to Tract 204 under the Act of June 16, 1934, and on the same date issued a letter to the Register at Las Cruces, cancelling the entry of Daura V. Peacock, to the extent that it conflicted with Tract 204 and authorizing the issuance of final certificate on the balance. That letter in part read:

"On November 13, 1935, the El Paso Commercial Company, through its president, Frank Wells Brown, filed final proof in your office for the use and benefit of those claiming under Daura V. Peacock, as to said 9.82 acres who were shown to be Ralph W. Crocker, one-half interest, and Marie Kerber Logan, Ruth Kerber Kemler and Louise Kerber Logan, one-half interest. The parties in interest in this case have acquired the equitable title emanating from the State of Texas as to the part of P.C. 80, Tract 1, embraced in Tract 204, shown on sheet 7 of plats of amended surveys in said Sec. 33, and have applied for a patent for said tract 204 under the Act of June 16, 1934 (48 Stat. 975) serial 051131.

"Accordingly, the Daura V. Peacock entry is hereby cancelled to that extent and you are hereby directed to issue final certificate for the remaining portion. * * *"

On September 26, 1936, a patent to Ralph W. Crocker and Charles A. Kerber, and their heirs, to Tract 204, the 83.50 acre tract which included the area in conflict, was delivered to the El Paso Commercial Company, and on November 9, 1936, patent 1085888 for the balance of the combined claims was also delivered to the El Paso Commercial Company. Thereafter, appellee Fuller demanded performance of the contract which was refused by the appellants.

Based on the stipulated facts and plaintiff's testimony, the court made findings of fact and conclusions of law and decreed for the plaintiff, substantially as follows: The plaintiff is the owner of a 13.55 acre undivided equitable interest in the larger

tract, that is, the tract containing 83.50 acres, involved herein; that defendant Ralph W. Crocker owns an undivided one-half interest in the 83.50 acre tract, subject to the undivided 13.55 acre equitable interest of the plaintiff; that Marie Alice Kerber Crocker, Ruth Leah Kerber Kemler, and Louise Kerber Logan have the legal title to the other undivided one-half interest in the 83.50 acre tract, likewise subject to the undivided 13.55 acre equitable interest in the plaintiff; that a certain contract made and entered into on December 27, 1928, and which is the foundation of this suit, be specifically performed; that a receiver be appointed and directed to sell the 83.50 acre tract; that out of the proceeds from the sale covering the entire tract, there be paid to the plaintiff the value of the 13.55 acres, at the per acre price received for the whole tract. Mrs. Alice Kerber died on May 13, 1931, and her husband, C. A. Kerber, died on Feb. 21, 1930. Marie Alice Kerber Crocker, Louise Kerber Logan, and Ruth Leah Kerber Kemler, are the daughters, heirs at law, devisees, and executrices of the estate of Mrs. Alice Kerber, deceased. They succeeded to all the rights and liabilities of their mother to the land involved as well as the obligations of the contract. Defendant Ralph W. Crocker is the husband of defendant Marie Alice Kerber Crocker. He was not, however, a party to the contract made on December 27, 1928.

Many errors are assigned by the defendants to the trial court, which are summed up in five points. Each point will be considered and treated separately.

Under point one, defendant Ralph W. Crocker contends that inasmuch as he was not a party to the contract of December 27, 1928, he was not bound thereby and that his conduct during all the proceedings does not constitute a fraud or work an estoppel and that, therefore, his half interest in the 83.50 acre tract is free from any equitable interest in Fuller and that the contract should not be ordered specifically performed as against him.

In order to understand appellant Crocker's position in the case it is necessary here to summarize the facts as they relate to him and his interest even though some of the facts recited are a repetition of facts already narrated heretofore in this opinion.

Tract 204 was sold on March 17, 1914, to Mrs. Mundy. Later that same year Mrs. Mundy and her husband, John J. Mundy, by warranty deed conveyed the tract to Charles A. Kerber and the appellant Ralph W. Crocker. Daura V. Peacock, immediate predecessor in interest of appellee Fuller, on Oct. 13, 1914, filed his application for patent to the tract known as PC 80, Tract 1, which conflicted with the tract that Mrs. Mundy claimed and conveyed to Kerber and Crocker to the extent of 27.10 acres. Mrs. Mundy filed her protest against Peacock's application on January 11, 1915, but because of the dispute as to the boundary between Texas and New Mexico, action on Peacock's application and on Mrs. Mundy's protest was long delayed. Peacock meanwhile conveyed whatever interest he had in PC 80, Tract 1, to appellee Fuller. Final-

ly on December 27, 1928, while Peacock's application was still unacted upon, Kerber and his wife on the one hand, and appellee Fuller on the other, entered into the written contract hereinbefore outlined, and in pursuance thereof the Fullers gave their quitclaim deed to Mrs. Kerber on May 27, 1929. Crocker, it should be remembered, was not a party to the contract of December 27, 1928. Subsequent to that date Crocker, on October 28, 1929, executed and delivered to Mrs. Alice Kerber his quitclaim deed to his one-half interest in Tract 204, but this conveyance it is claimed was invalid because Crocker was married and his wife had not joined in the conveyance.

■ Although the court did adopt a conclusion of law holding that the deed from Crocker to Mrs. Kerber was invalid because not signed by his wife, who was a party to the suit, nevertheless the Court found and all parties acquiesced that defendant Crocker personally had the legal title and owned an undivided half interest in said 83.50 acre tract, subject only to the 13.55 acre equitable title and interest owned by the appellee.

It appears that all of the parties tried this case upon the theory that Crocker personally owned the land and there is no contention on the part of anybody, including Mrs. Crocker, that it was community property. The question of community property was never raised. Thus the apparent conclusion of the Court that the Crocker deed to Mrs. Kerber was void by reason of the wife's nonjoinder, was immaterial and seemingly inadvertent.

The trial court, however, found that Crocker had the benefit of the contract between Fuller and Mrs. Kerber and that, having accepted the benefits of the contract and having executed his quitclaim deed to Mrs. Kerber, he is now in equity and good conscience estopped by his conduct and by the making, execution and delivery of said deed, to deny his liability under said contract.

■ It is pointed out by appellants that there is no specific evidence to show that Crocker had knowledge of the existence of a contract between Mrs. Kerber and appellee Fuller. Facts and circumstances were stipulated and proved, however, from which an inference could be, and was, drawn by the trial court that he did have such knowledge. The trial court supported its conclusion by denying that Crocker was relieved from the contract and by subjecting his one half interest as well as the interest of the Kerber heirs to the Fuller claim. In view of the wide field for inference accorded the jury or a trial court finding the facts, there was enough evidence before the court to justify its action in holding Crocker's interest bound by this contract. Where facts and circumstances are proved from which an inference may be and is drawn by the trial court, the finding of such an inference will not be disturbed on appeal. Trigg v. Trigg, 37 N. M. 296, 22 P.2d 119. In Hogsett v. Hanna, 41 N.M. 22, 63 P.2d 540, this court further

held that the reviewing court is without power to substitute its own deductions though these may be equally reasonable under the facts, for those made by the trial court.

■ The contract between Fuller and Mrs. Kerber compromising and settling their conflicting claims was entered into on December 27, 1928. In it Mrs. Kerber represented she was the full owner of Tract 204. On October 29, 1929, appellant Crocker executed his quitclaim deed to Mrs. Kerber conveying to her his interest in Tract 204. In order that she might procure a patent it was necessary that she make, and she did make, an affidavit that there were no outstanding claims. After making this quitclaim deed Crocker silently stood by from October 29, 1929, until April, 1935, permitting Mrs. Kerber to file an amended application for a patent on the whole tract of land including his interest. In this application she made affidavit that she was the owner of all lands embraced in the application and "that an adverse title issued from and under and by virtue of the Canutillo Grant, El Paso County, Texas, exists to a portion of this land, all of which adverse title is now vested in me as is all the title emanating from the Refugio Colony Grant, and that there is no other adverse title excepting of the United States," etc.

It is significant that Crocker's conveyance was made on October 29, 1929, and that Mrs. Kerber's amended application for patent as shown by the date of the notary's verification was made on November 20, 1929. During all the six year period when Crocker stood by he asserted no adverse claim nor did he protest or contest said amended application and the proceedings had thereon. Furthermore, it must be remembered that Crocker was a son-in-law of Mrs. Kerber and that the whole transaction was a family affair. The El Paso Commercial Company, also, acted as agent for the defendants and had full knowledge of the Fuller-Kerber contract of December 27, 1928, and of what was done thereunder.

Considering all these facts, an inference properly lies that Crocker knew all about the contract between Fuller and Mrs. Kerber and that his conveyance antedating her amended application by only thirty days was made for the very purpose of putting her in a position to prosecute successfully the claim for the patent. This inference, being properly deducible from the established facts, we can not disturb on appeal. It should be noted that no other reason has been advanced by appellant Crocker why he made his conveyance to Mrs. Kerber, and we subscribe to the trial court's view that his conveyance was for the purpose of enabling Mrs. Kerber to prosecute the patent claim. It follows that we concur in the trial court's conclusion that Crocker is subject to the terms of the contract made with Fuller.

The appellants next contend that the pleadings and the evidence fail to show compliance on appellee Fuller's part with the provisions of the contract of December 27, 1928, on his part to be performed;

that as a consequence appellee is not in a position to compel performance of said contract on the part of the appellants or to impress a trust.

Peacock and Fuller claimed their right or title under the Refugio Colony Grant, and they and their grantors apparently occupied and improved the land in dispute prior to 1902 in the belief that the same was embraced within the boundaries of said grant. Mrs. Kerber, on the other hand, was claiming title to this same area which is in dispute under the Canutillo Grant from Texas. It thus appears, and we adopt the wording of Judge Hay's decision on this point "that the parties to this contract entered into it with a view to compromising their differences as affecting their interests in lands for which patent had not as yet issued * * *. This contract having been made, compromising and settling their differences and looking forward to the issuance of patent to certain lands and requiring certain other things then to be done, was entered into in good faith." Both sides feared that the other had certain rights which would defeat their own claim, so each party agreed to give up a one-half interest in the disputed area in consideration of the other party doing the same in order to facilitate procurement of the needed patent. Title was vested in Mrs. Kerber, who thereby became trustee for the other's half-interest. See 26 R.C.L. 1218. The only basis on which it can be successfully contended that Fuller does not now retain this equitable one-half interest is that he has in some manner through his own waiver or acquiescence become estopped from asserting his rights under the contract of December 27, 1928.

In order to understand appellants' reasoning that appellee's pleadings and evidence fail to show compliance with the terms of the contract let us examine the pertinent provisions of the contract. The contract provides:

"Sixth: Whereas, the parties hereto propose to settle, adjust and compromise all matters concerning the conflict between them respecting the lands claimed by each of the parties hereto, and to arrange the handling and disposition of said lands in a mutually satisfactory way and manner, as follows, to-wit:

"(a) The party of the second part (Fuller) will convey to the parties of the first part by appropriate conveyance or conveyances all of his interest in and to PC 80 Tract No. 1, Daura V. Peacock, and execute such additional instruments in favor of Mrs. Alice Kerber as may be required, or deemed advisable by the United States Land Office in obtaining patent or patents to all of the lands of the parties hereto, for the purpose of carrying out this mutual adjustment."

(c) "The party of the first part (Mrs. Kerber) will pay all of the necessary costs and expenses in procuring such patent or patents and establishing a marketable title to all of the lands claimed by the parties of the first part and the party of the second part as herein mentioned and described, the party of the second part furnishing to the

party of the first part all conveyances, abstracts, maps, plats, etc. he may have or possess concerning said lands at no expense to the parties of the first part. * * *"

In his pleadings the appellee made the following allegation bearing on the question of performance under the contract on his part: "That the plaintiff, Pendleton R. Fuller, * * * made, executed and delivered to the said Mrs. Alice Kerber his certain quitclaim deed, which is recorded in Book 79, page 319 of the Deed Records of Dona Ana County, New Mexico, and thereby conveyed to her the said tract of land known and designated as PC 80, Tract No. 1, Daura V. Peacock. * * *"

In the reply to appellants' answer, Fuller further alleged: "Plaintiff denies * * * that he did not supply proof necessary for the issuance of the patent, but says that the application was made by Kerbers and their agent and attorneys, and he was not called upon to furnish any proof that was not furnished, and at all times he in good faith acted in every way, with respect to witnesses and proof that was requested by Charles R. Loomis or Frank Wells Brown, acting for the defendants and their predecessors in interest. * * *"

It thus appears that appellee did allege in his pleadings a conveyance of his interest in compliance with the contract. The provisions in the contract respecting the "additional instruments * * * as may be required, or deemed advisable by the United States Land Office" were conditions subsequent rather than conditions precedent. Appellee was to act as to them only if and when they were deemed advisable and called for by the United States Land Office. A plaintiff need not allege performance of conditions subsequent in his complaint. Their nonperformance is a matter of defense to be availed of affirmatively by the answer. Wood & Selick v. Ball, 190 N.Y. 217, 83 N.E. 21; 49 C.J. 146, § 157. Appellee, then properly countered in his reply by alleging that no additional instruments were called for. In other words, appellee's pleadings, as to them, were complete.

Appellee, it is true, might have alleged in his complaint that he had no prior conveyances, or abstracts, maps, plats, etc., pertaining to the land in question. Yet, not having been asked to furnish any, appellee's obligation was fulfilled without them. The maps, old deeds, etc., would be but additional instruments and are inferentially included in the denial in plaintiff's reply, quoted supra. Omission of an allegation necessarily implied in or from other allegations is immaterial. 49 C.J. 120. The allegations, then, if and when proved, indicate a satisfactory performance on appellee's part. What proof, now, was introduced to support the pleadings?

The stipulation in the nature of an agreed statement of facts contains these paragraphs:

"11. That on the 27th day of December, A. D., 1928, while said application of Daura V. Peacock was then pending before the Commissioner of Public Lands of the Unit-

ed States, and while the contest of the said Mrs. J. J. Mundy was still unacted upon, the said Charles A. Kerber and his wife, Alice Kerber, on the one part, and the said Pendleton R. Fuller, on the other part, entered into the written contract referred to in plaintiff's amended complaint; * *

"13. That in pursuance of said contract and agreement, plaintiff and his wife, by quitclaim deed of date May 27, 1929, conveyed all the right, title and interest or claim they had in and to the tract of land known and described as PC 80, Tract 1, Daura V. Peacock to Mrs. Alice Kerber; that a copy of said quitclaim deed is hereto attached, marked Exhibit 'C', and made a part of this stipulation, and said copy may be taken as proof of said deed without further evidence."

This stipulation is further supported by the testimony of appellee Fuller, as follows:

"Q. Now it is further stipulated that on May 27th 1929, you executed a quitclaim deed to Mrs. Alice Kerber, conveying all your rights in and to that tract of land known as P.C. 80, tract 1, to Mrs. Alice Kerber; that is correct, isn't it? A. Yes sir.

"Q. What was your purpose in making that conveyance to Mrs. Kerber? A. To comply with the terms of that contract.

"Q. Of December 27, 1928? A. Yes."

No evidence has been offered by appellants to show that appellee was asked to furnish additional instruments, and since there is no evidence showing or tending to show that appellee did have maps, conveyances or abstracts, which he failed to turn over, we must assume that he had none.

The appellants insist that under the contract there was a duty imposed on appellee to furnish proof of occupation and improvement on PC 80, Tract 1, Daura V. Peacock, and as authority for the statement cite paragraph (d) of the contract of December 27, 1928. This section provides: "that any additional proof or proofs affecting the title or titles of the property of either of the parties hereto and not of the other party hereto, and necessary or desirable for the issuance of a patent or patents shall be supplied by and at the cost of the party whose title is so affected."

It is conceded that up until the time the contract of December 27, 1928, was entered into, appellee had acquired no proof of title, but it is certainly obvious that the provision of the contract calling for the furnishing of additional instruments meant instruments which were within the power of the party affected to be obtained. It did not mean that the parties were to obtain the impossible. It was largely for this very reason of obtaining a patent and valid title that the contract itself was entered into— in the hope that by pooling the two conflicting interests a sufficient undisputed claim might be established to obtain issuance of the patent or patents. It is further obvious that by virtue of the fact appellee conveyed by deed to the appellants such claim as he did have, he was no longer

in position to make proof under the Act of February 3, 1911, or any other act, since there had been a merger of his interest into that of the appellants. In other words, such type of "proof" can not be what the parties intended that should be furnished if and when called for.

The text of the paragraph further indicates that the proof intended was in addition to that which was contemplated as "necessary or desirable" at the time the contract was entered into. No obligation arose, therefore, until and unless such additional proofs were called for, and since no requests therefor were made upon appellee, no failure to perform can be shown on his part.

We conclude that under the stipulated facts and the evidence, appellee sufficiently performed his part of the contract, and as a consequence, there was no error in the trial court's findings in this respect.

Appellants' third contention is that the contract of December 27, 1928, was made with reference to the Act of Congress of 1911, and when the proceedings for the issuance of patent to the disputed area under the Act of 1911 failed and the application was finally rejected under that act, the contract terminated and all rights and obligations thereunder ceased. This contention must be considered as correct if it is concluded that the contract was conditioned solely upon proceeding under the Act of 1911, for then final determination thereunder would constitute complete performance by the appellants under the terms of the contract. This is precisely what appellants contend. If, on the other hand, the contract is construed to mean that the parties wanted to settle their conflict for purposes of obtaining patent without regard to any particular act under which this might be consummated, then, obviously, denial of patent under any one particular act does not necessarily terminate the contract. This is in line with the position taken by the appellee.

In analyzing the two views it becomes necessary to arrive at the purpose, meaning and intent of the parties and the first and primary evidence of this is the written language of the pertinent provisions of the contract itself. 17 C.J.S. 695. The intention of the parties is to be deduced from the language employed by them and the terms of the contract where unambiguous are conclusive. The contract contains this general provision: "It is mutually understood and agreed that this agreement is made for the purpose of compromising and adjusting all matters between the parties thereto, and is not understood to be an admission by either of the parties hereto as to the respective claims of the parties prior to this agreement, but is made solely for the purpose of adjusting the matters in conflict and not for any other purpose or purposes."

Nowhere in the entire contract is there any suggestion that in endeavoring to accomplish the purpose or purposes thereof the appellants must proceed under one particular statute to the exclusion of all oth-

ers, although it seems probable that they had the Act of 1911 more particularly in mind. But it appears throughout the entire transaction that the purpose and intent of the agreement was to obtain a patent in order to be in position to sell the land and then to pay off both parties to the disputed area on a fifty-fifty basis. We can not read into a contract a provision which is not there. The intention of the parties and the meaning are gathered primarily from the writing itself. Fancher v. Board of Commissioners of Grant Co., 28 N.M. 179, 210 P. 237. Particularly is this true where it is as consonant with good reason that a certain provision was not intended to be there as that it was so intended. It is not the province of this court to alter a contract by construction or to make a new contract for the parties; its duty is confined to interpretation of the one which the parties made for themselves. 17 C.J.S. 702. The mere fact that appellee's predecessor in title, Peacock, had filed application for patent under the Act of 1911, at a time when it was the only act under which he could have proceeded, is not conclusive evidence that appellee was thinking only in terms of proceeding under this same act when the contract with appellants was made many years later. As a matter of fact, since Peacock had not yet been successful, it is not unlikely that appellee intended that other avenues should be explored, if such were found available, in order to obtain the patent. The trial court reasonably concluded that what the parties intended was that appellants should pro-

ceed under whatever act they might find available under which patents might be most likely obtained, whether the act was based on a New Mexico or on a Texas grant. The contract placed Mrs. Kerber in position to proceed under either. It was likely that it was because of this uncertainty that the provision relating to additional proof and instruments was included. Not knowing under what Act of Congress appellants would find it best to proceed they did not know what additional conveyances and proofs might be necessary to establish the claims. Hence, provisions were placed in the contract to obtain this proof from whichever party it might be found would be in position to furnish the particular proofs or instruments found necessary. Indeed the provision that Mrs. Kerber would "apply for and endeavor to have a patent or patents issued to them covering all the lands claimed" indicates that the parties were not limiting their deliberations to acting under any one act. It clearly suggests that as to some of the lands they might find it best to proceed under one act to obtain a patent and as to the rest to proceed under another act. This, we note, is just what eventually happened. Fuller applied and paid for a patent on the Viramontes Tract under the Act of 1911, appellants obtained patent as to the rest under the Act of 1934. Furthermore, in view of the uncertainty of the location of the boundary between Texas and New Mexico, the parties were more particularly alert to the possibility of having the line pass through the tract in dispute and the possible necessity of having

to proceed under separate and independent acts of Congress.

We cannot agree with the statement made by appellants in their brief in chief at page 25 which reads: "Acting in pursuance to the contract of December 27, 1928, plaintiff Fuller conveyed P.C. 80 Tract 1 to Mrs. Kerber. This was to enable Mrs. Kerber to file the amended application under the Act of February 3, 1911, as the contract provided."

Mrs. Kerber was not under the terms of the contract restricted to proceed under the Act of February 3, 1911, but it was the intention of the parties that she should proceed to obtain the patent or patents in whatever manner or under whatever act or acts of Congress this might be accomplished in order to "perfect the titles to all of these lands so that there may be a good marketable title or titles to all of said lands belonging to the parties hereto."

The distinction raised by appellants between the Act of Feb. 3, 1911, and the Act of June 16, 1934, in that the former refers to the Commissioner of the General Land Office and the latter to the Secretary of the Interior is without merit. We could not expect the parties to know in 1928 that in 1934 the Congress would name the Secretary of the Interior instead of the Commissioner as the proper person with whom to file applications for patent. The contract was sufficiently broad to encompass minor changes of this nature.

The trial court correctly concluded that the parties did not enter into the contract with the intention of proceeding under any particular statute. The contract was consummated for the purpose of endeavoring to obtain a patent to the land so that the parties might show a marketable title enabling them to sell the land and to liquidate their conflicting claims by dividing the proceeds on the basis set forth in the instrument.

Appellants further contend that by their actions the parties placed a practical construction on the contract of December 27, 1928, regardless of any ambiguity contained therein; and that this construction was that the contract related solely to the Act of 1911, and to no other law; and when the proceedings under that Act for the securing of patent to the disputed area were terminated adversely to the applicants, the contract became functus officio and all rights and obligations thereunder ceased.

Appellants' stand is based primarily upon the fact that after appellee had received the letter from Charles R. Loomis, dated July 27, 1934, enclosing the original letter from F. Wells Brown to Charles R. Loomis, dated July 26, 1934, indicating that appellants were no longer proceeding under the contract of December 27, 1928, appellee took it upon himself to make application for patent on the Viramontes tract only. We do not agree to appellants' view that the action taken by appellee necessarily

meant acquiescence by him in any attempted termination of the contract of December 27, 1928. It is to be noted that appellee had special obligations of his own respecting the area included in the deed to Mrs. Kerber under Fuller's warranty deed to Viramontes. He sought to mitigate the damages that would result to him with reference to this particular tract to which appellants now laid no particular claim, as a result of their repudiation of the contract. Fuller had but thirty days from the time of notice to effect the appeal and could not afford to let the time in which to file his appeal pass by as to this tract to which appellants could not claim patent under their Texas claim. Thus to preserve the possibility of obtaining the patent, Fuller appealed. When he did so he employed the attorneys named in the contract as agents for both sides, tending to show that appellee was proceeding in order to mitigate the damages that would result from appellants' repudiation under the contract and that appellee was not proceeding independently of it. Why the attorney sought patent only for the Viramontes tract and not the part in direct conflict is not apparent. Yet, the possibility that he saw a better way of having the disputed tract patented in behalf of the parties under the new act of June 16, 1934, is very impelling. That Loomis was fully aware of this new legislation and drew his appeal with its existence in mind is evidenced by his appeal from the decision of the Commissioner of the General Land Office under points in the appeal marked "Tenth" and "Twelfth". Appellee entrusted the matter of applying for the appeal to the attorney Loomis and in view of our conclusion that the facts did not warrant a finding that appellee was thinking of proceeding under the Act of 1911 only, even if Fuller actually knew of the specific exclusion of the disputed area from this appeal, he left it to the mutual attorney to prosecute the proceedings in accordance with the latter's best judgment. We accordingly hold that the rule of practical construction as announced in La Luz Community Ditch Company et al. v. Town of Alamogordo, 34 N.M. 127, 279 P. 72, to which appellants refer, is not applicable in this case.

Appellants submit that the trial court erred in finding that the appeal taken by appellee was not limited or restricted to the Viramontes tract. We merely note in passing that the court's finding does not hold this. The court did find "that the said above mentioned appeal and the Daura V. Peacock application for patent No. 010060 was not limited or restricted to the tract of land herein designated as the Viramontes Tract by the Land Commissioner until June 16, 1936." In other words, there was no limitation until after appellee had received appellants' repudiatory letter and acted to protect the Viramontes Tract against the effect of the repudiation. As heretofore noted the attorney Loomis must have seen the advisability of proceeding under the new Act of 1934, rather than pursuing an appeal under the Act of 1911

as regards the area in conflict since, after the merger of appellee's and appellants' claims, he could proceed either on the basis of the Texas or the New Mexico grants. He may have concluded now that there was more merit to appellants' Texas claim than appellee's New Mexico claim. But that did not affect appellee's position in the least under the terms of the contract. The superiority of one claim over another was not apparent when that contract was made. Contracts must be construed with reference to the intention of the parties at the time they are made. 17 C.J.S., Contracts, § 295. In acting under the 1934 Act it was not necessary for the appellants to indicate appellee's interest in the land. The appellee had conveyed to appellants for the very purpose of eliminating the likelihood of having his interest stand as a hindrance to issuance of a patent. Hence, appellee's conduct, rather than indicating an acquiescence on his part to termination of the contract may well indicate his affirmance of the contract and an intention to stand on his rights thereunder by performance on his part.

▉ Appellants, however, contend that after the adverse action based on the application under the Act of 1911, the parties mutually abandoned the contract and went their several ways independently of each other, without respect to the contract. We can see, of course, now that appellants feel that their bargain with appellee was a bad one, that this would be to their best interests. Appellee's appeal in accordance with the suggestion in the letter from F. Wells Brown, however, read: "Pendleton R. Fuller For The Use And Benefit of Daura V. Peacock, Ralph W. Crocker, Marie Crocker, Ruth Kerber Kemler, Louise Kemler Logan and Pendleton R. Fuller," indicating that appellee had not turned away from the terms of the contract. Likewise we again note that appellee went to Loomis, the attorney under the contract, to perfect the appeal. Appellee had not consented to a termination of the contract. It requires the mutual assent of both parties to terminate a contract prematurely just as much as it requires such assent to enter into a contract in the first instance. Appellants had made final proof on Fuller's application and they had thereby received the benefits of the contract, but they had not performed their own obligations under it. So the trial court must have viewed the matter. On November 9, 1936, Patent No. 1085888 for the Viramontes tract was delivered to appellants' agents, the El Paso Commercial Company, which was in furtherance of the terms of the contract. Appellee can not have gone his own and several way because appellants have not restored him to his status quo.

▉ In view of the conclusions reached, we need not consider in detail the cross assignments of error raised by appellee. Only the first contention assigning as error the trial court's decision in overruling appellee's motion for judgment by default need be considered. This conten-

tion is based upon the provisions of Sec. 105-804, N.M.S.A. 1929 Comp., that since no answer had been filed with the clerk of the court within the time specified in the summons or such further time as may have been granted, the judgment should have been granted. The summons was issued on October 18, and served on the last of the defendants on November 1, 1937. On November 13, twelve days after the last defendant was served, defendants filed motion for discovery of documents and said motion was granted by the court on November 27. Under the summons thirty days were allowed in which to answer. Sec. 105-303, N.M.S.A. 1929 Comp. Since the day defendants filed their motion for discovery of documents to enable defendants to plead, however, the time was tolled until the necessary documents were produced. There is no evidence in the record as to when and whether this material was filed. We can not conclude upon this state of the facts that failure to answer prior to December 22, 1937, made it incumbent upon the trial court to grant the motion for judgment by default filed on that date. There being no evidence to indicate the contrary we must assume that the trial court acted legally in overruling the motion.

For the reasons stated, the judgment of the lower court is affirmed. It is so ordered.

BICKLEY, C. J., and BRICE, SADLER, and MABRY, JJ., concur.