Matthias, J.
 

 The controversy in this case arises from a disagreement as to the construction and effect of the contract between the parties, particularly the following provisions:
 

 “*
 
 * * iessor sball, when charges have been approved, immediately credit the amounts thereof to the account of the lessee, but until said charges have been remitted for by lessor, said charge accounts shall be and remain the property of the lessee. After remittance on the same, the lessor shall assume ownership-of said accounts and all risk of collection. The lessor shall have the sole right to determine the manner'of ex-' tending credit. * * * All funds in the bank account of lessor or in lessor’s store or otherwise, up to the balance due to the lessee herein at that time, shall be the property of the lessee and held by the lessor in trust to the lessee’s use, it being agreed that in the event said funds are commingled with funds of the lessor
 
 *62
 
 and withdrawals have been made from such commingled funds that lessor expended lessor’s own portion of said funds first, and if any of said funds belonging to lessee have been invested in merchandise, said merchandise is impressed with a trust in favor of said lessee. Nothing 'herein shall be construed as giving the lessor the right to invest or use the said funds of the lessee or to check against the same, other than to the order of the lessee.”
 

 The Board of Tax Appeals,- in its entry, announced its finding of facts and decision as follows:
 

 ‘ ‘ The board further finds that the appellant operates millinery departments in various stores within and without Ohio; that in each case said department is operated under a written agreement denominated ‘lease and contract’ under which agreement the appellant pays a certain percentage of its gross sales to the store as rental for the space occupied and services used; that said agreement also provides that both cash and credit sales are handled through the regular system of the store; that all credit sales are submitted to the credit department of the store for approval and when approvd are credited to the account of the appel_ant; that the store pays appellant’s clerks and employees who operate the department and all other incidental expenses thereof; that an accounting or settlement is made monthly or bi-monthly at which time the store deducts from appellant’s gross sale's the rental and all other charges paid by the store and remits the balance to the appellant. Said agreement further provides that the cash proceeds from the sales shall be .considered trust funds and that appellant shall retain title-to the charge accounts until they have been remitted for by the store at which time the store shall assume sole ownership of said accounts. The evidence shows that the department manager orders the goods for the department .directly from .wholesale houses or
 
 *63
 
 the appellant’s warehouse at Columbus, Ohio; that these orders are confirmed by the Columbus office and are all paid from the Columbus office; that the moneys remitted by the stores are deposited in appellant’s bank account at Columbus, Ohio; that neither the department manager nor the Columbus office collected any of these individual accounts;' that they were all collected through the stores.
 

 “On consideration whereof the board finds that if the appellant retains any title to the cash proceeds from sales or to the individual charge sales it is for the purposes of security only; that for all other purposes both become the property of the store; that the'accounts receivable here in question are accounts owing by the various stores to the appellant; that they arise out of business transacted outside of this state but are not used in business transacted outside of this state within the provisions of Section 5328-1, General Code, and are therefore taxable in Ohio.”
 

 The appellant contends that this decision is not lawful for the contract between the parties establishes ownership of money and of the charge accounts to be in the lessee, The Haverfield Company. To establish the effect of this contract, they cite the cases of
 
 In re Steele-Smith Dry Goods Co.
 
 (D. C.), 298 F., 812;
 
 In re Kline
 
 (D. C.), 7 F. Supp., 850, which was affirmed by the Circuit Court of Appeals, Third District, in the case of
 
 United States National Bank in Johnstown, Pa.,
 
 v.
 
 Blauner’s Affiliated Stores, Inc.,
 
 75 F. (2d), 826, dercided February 1, 1935.
 

 The primary contention of the appellant seems to be that since Iiaverfield owns the moneys and the charge accounts, there are no accounts receivable due them from the lessor stores. At first impression this .seems to be true but, considering first the charge accounts, it is difficult to see' hew these.can fail to be accounts receivable. The purchasers of millinery have
 
 *64
 
 not yet paid, as of tax listing day* for the goods secured by retail purchase from The Haverfield Company. Appellant’s contract provides such purchasers do not owe the lessor department store, but owe the money to appellant, even though the charge accounts appear to the purchaser to be owned by the lessor department store. Even if the contract be given full effect, it only means the money due on these retail charge sales is due directly to The Haverfield Company, and not indirectly through an interposed liability of the lessor department store to the lessee.
 

 As to the money from cash sales turned over by the lessee to the lessor department stores, the contract is less clear, but certainly the department store had a duty to apply this money according to The Haverfield Company’s instruction and a duty to pay the money at regular times. The arrangement may have been a deposit of moneys instead of accounts receivable, with the incidental debtor and creditor relationship, but for the purposes of taxation the difference is unimportant, for both accounts receivable and deposits are taxable under Sections 5328-1 and 5328-2, General Code. As we view the record these were accounts receivable on tax listing day.
 

 We have left, then, the question whether these accounts receivable had a taxable situs in Ohio. Similar questions were before this court in the cases of
 
 Procter & Gamble Co. v. Evatt, Tax Commr.,
 
 142 Ohio St., 369, and
 
 Ransom & Randolph Co.
 
 v.
 
 Evatt, Tax Commr.,
 
 142 Ohio St., 398. The appellant contends that the decision of this court in the
 
 Ransom £ Randolph ease
 
 is dispositive of this case. In the
 
 Ransom & Randolph case
 
 it was conceded by the parties that the intangibles there under consideration arose out of business done outside the state. Here the Board of Tax Appeals made a similar finding and the appellant, of course,
 
 *65
 
 does not contest that, for the reason that such a -finding is essential to his position. Likewise, the appellee: limited his inquiry to determining “whether the credits were actually used in business outside of Ohio.”
 

 This limited question involves the construction of Section 5328-1, General Code, and certain parts of Section 5328-2, General Code, and also of Section 5325-1, General Code.
 

 Section 5328-1, General Code, provides in part that “Property of the kinds and classes mentioned in Section 5328-2 of the General Code, used in and arising out of business transacted in this state * * * shall be subject to taxation; and all such property of persons residing in this state used in and arising out of business transacted outside of this state by, for or on behalf of such persons, * * * shall not be subject to taxation. ’ ’
 

 Section 5328-2, General Code, provides in part that “Property of the kinds and classes herein mentioned,
 
 when used in business,
 
 shall be considered to arise out of business transacted in a state other than that in which the owner thereof resides in the cases and under the circumstances following:
 

 “In the case of accounts receivable, when resulting from the sale of property sold by an agent having an office in such other state or from a stock of goods maintained therein, or from services performed by an officer, agent or employee connected with, sent from, or reporting to any officer or at any office located in such other state.”
 

 Clearly these two sections are
 
 in pari materia,
 
 for Section 5328-2, General Code, is incorporated by reference into Section 5328-1, General Code. These sections determine the situs of taxable property, Section 5328-1 in general terms and Section 5328-2 in more specific terms. Neither section, however, defines' the
 
 *66
 
 term “used in business,” the meaning of which in fact presents the sole question before us, for, as previously stated, it is conceded that the accounts receivable arose out of business, as defined in Section 5328-2, General Code.
 

 The term “used in business,” as applied to this case, is defined by Section 5325-1, General Code. Following the general definition of the term therein, it provides that ‘ ‘ accounts receivable and prepaid items, and other taxable intangibles shall be considered to be ‘used’ when they or the avails thereof are being applied, or are intended to be applied in the conduct of the business, whether in this state or elsewhere.”
 

 Quoting Section 5325-1, General Code,' further: The term “ ‘business’ includes all enterprises of whatsoever character conducted for gain, profit or income and extends to personal service occupations.”
 

 The question of the meaning of the term “used in business” was before the court in the case of
 
 Ransom & Randolph Co.
 
 v.
 
 Evatt, Tax Commr., supra.
 
 The facts in that case are somewhat similar to the facts before us in. this case.
 

 The evidence herein shows that questioned accounts receivable were payable to the corporation at its Columbus office, never to the local store managers; and that the avails of such accounts receivable were deposited in-a Columbus bank, from whence they were withdrawable only by the Columbus office, and that such avails were used in conducting the entire business of the appellant corporation, whether it was Ohio or out-of-state business.
 

 The similarity of this case and the
 
 Ransom é Rai%dolph case
 
 is apparent from a comparison of the facts as found in this case and those incorporated in paragraph five of the syllabus in the
 
 Ransom & Randolph casey
 
 which reads as follows":
 

 
 *67
 
 “Tlie-fact that-a resident of Ohio withdraws the avails of accounts receivable, otherwise exempt from taxation, from banks in which out-of-state branches of. his business have.deposited them, and uses such avails in his-business generally, including the., payment uf .the expenses of such out-of-state branches, does not effect a change of .the business .situs of such accounts receivable for the purpose of taxation. Such accounts receivable are to be considered as having a business situs in the state where created, if they meet the test laid down in Section 5328-2, General Code.”
 

 The term “used in business,” as defined by Section 5325-1,. General Code, includes all the ordinary- customs and practices of business within its terms, and requires primarily that the avails of the accounts receivable be applied or be intended to be applied in the-conduct of the business of the company, whether in, this state or elsewhere. These provisions are specific and clear and, applied to the facts in this case, require that the decision of the Board of Tax Appeals be reversed.
 

 Decision reversed.
 

 Weygandt, C. J., Hart, Zimmerman, Bell, Williams' and Turner, JJ., concur.