No. 16,202.

HAMMOND *v*. CATON.
(212 P. [2d] 845)

Decided November 28, 1949.

Mr. JOHN T. DUGAN, for plaintiff in error.

Mr. B. F. NAPHEYS, JR., for defendant in error.

8

*In Department.*

Mr. Justice Moore delivered the opinion of the court.

Hammond and Caton were partners doing business under the firm name of Trixie Pet Food Co. On April 17, 1946, they entered into an agreement for dissolution of the partnership under which Caton, second party, agreed to buy the interest of Hammond, first party, in the partnership business. Omitting formal parts, the agreement was as follows:

"Party of the first part hereby agrees to sell and convey to the party of the second part all his right, title and interest in and to Trixie Pet Food Co., located at 3590 South Broadway, Englewood, Colorado, including the Good Will, Fixtures, Furnishings and Machinery in connection therewith, and also agrees to assign all his right, title and interest in and to the Trade Name of Trixie Pet Food, as listed in the State of Colorado and also in the Application for a United States trade name, together with all Stock in Trade now on hand in said Business.

"Said party of the second part agrees to pay for said Business the sum of Eleven Thousand & No/100 ($11,-000.00) Dollars as follows: Five Hundred & No/100 ($500.00) Dollars deposited herewith the receipt whereof is hereby acknowledged, and the sum of the Ten Thousand and Five Hundred & No/100 ($10,500.00) Dollars, on the 18th day of April A.D., 1946, upon the closing of the deal, when a Bill of Sale shall be delivered by the party of the first part to his undivided one-half (½) interest in said property together with an Assignment of interest in and to said Trade Name, both for the State of Colorado and the United States.

"Party of the second part further agrees, to pay within thirty (30) days the inventory value of all stock in trade to the party of the first part. Said inventory to be taken immediately.

"Possession to be given to the party of the second part upon the delivery of the bill of sale, together with said assignments, and upon the payment of the party of the second part of the sum Ten Thousand and Five Hundred & No/100 ($10,500.00) Dollars above stated.

"It Is Further Agreed, That all accounts owing and due said Partnership shall be adjusted as of April 18th, A. D. 1946, together with all Taxes, Insurance and other liabilities."

On April 18, 1946, the $10,500.00 was paid by Caton, and Hammond executed a Bill of Sale which, omitting formal parts, is as follows:

"Party of the first part for and in consideration of the sum of Eleven Thousand and No/100 ($11,000.00) Dollars, to him in hand paid at or before the ensealing or delivery of these presents by William E. Caton, the receipt whereof is hereby acknowledged, have bargained and sold and by these presents do grant, bargain, sell and convey unto the said William E. Caton, party of the second part, his executors, administrators, successors, or assigns all of the right, title and interest of the party of the first part in and to the good will, fixtures, furnishings, machinery, merchandise and other assets of the business known as Trixie Pet Food Co., located at 3590 South Broadway, Englewood, Colorado, together with all his right, title and interest in and to the Trade Name Trixie Pet Food, as listed in the State of Colorado, also in the application for the United States trade name.

"The said party of the second part agrees to pay for the undivided one-half (½) interest in and to the stock in trade at its inventory value, and also for the undivided one-half (½) interest in and to all accounts receivable within thirty (30) days from this date.

"Possession of said property to be given immediately to the party of the second part.

"To Have And To Hold the same, unto the party of the second part, his executors, administrators, successors or assigns forever.

"It Is Further Understood, That partnership hereof existed between the parties hereto shall dissolve as of this day, and party of the second part assumes all existing obligations of the partnership and all bills payable at this time, which shall be deducted from the inventory value of the stock in trade."

The inventory was taken on April 18, 1946, and the partnership accountant was directed to prepare a final audit and statement of the accounts of the firm as of April 18, 1946.

Hammond testified inter alia: "The agreement between Caton and I was we would settle on the basis of the figures furnished us by Mr. Puterbaugh in his final report." This statement is not contradicted by Caton. The accountant prepared his audit, from which it appeared that Caton owed Hammond $255.36. Hammond contended that Caton owed him $1,188.54; rejected the offer of the lesser sum, and brought this action. Caton, defendant below, deposited in court $255.36 plus an additional $28.03, being one-half the amount of a gas refund check received by Caton after the suit was filed.

At the conclusion of plaintiff Hammond's case the trial court, on motion for dismissal by Caton, found the issues as contended for by him and entered judgment accordingly. Hammond seeks reversal on writ of error.

Hammond contended in the trial court, and urges here, that under the dissolution agreement evidenced by the foregoing contract and bill of sale, he was entitled to receive, in addition to the $11,000.00 paid, and the items not in dispute, one-half the partnership cash in the bank, one-half the prepaid rent, and prepaid insurance. He contends that these items were not included in the assets purchased under the contract and bill of sale. Hammond further objects to the deduction from the amount due him of an overdraft by him in the amount of $438.70, as shown by the auditor's statement, representing withdrawals from partnership funds

in excess of his share in earned profit. The sum total of these items accounts for the difference in the final settlement figures contended for by the parties.

There is but one question presented by this record, which is:

*Do the terms of the agreement for dissolution of partnership and the bill of sale herein set out, as a matter of law, require Caton to pay to Hammond one-half of the cash in the bank, prepaid rent, and insurance, and to surrender without adjustment the overdraft of Hammond?*

Hammond contends that the following provision of the contract sustains his position: "That all accounts owing and due said partnership shall be adjusted as of April 18th, A.D. 1946, together with all taxes, insurance and other liabilities." He argues, in effect, that cash in the bank and prepaid rent and insurance are "accounts owing and due" the partnership to be "adjusted" by an equal division between the partners, and that his half thereof is due in addition to the $11,000.00 paid for his interest in the business.

The bill of sale executed by Hammond conveyed to Caton all the interest of Hammond "in and to the good will, fixtures, furnishings, machinery, merchandise *and other assets of the business. * * * *"* (Italics supplied). While it is not signed by Caton, it provides that Caton will pay to Hammond, "one-half interest in and to all accounts receivable" within thirty days. The trial court held that cash in the bank and the prepaid items were not accounts receivable within the meaning of the provisions of the contract calling for a division of such accounts. Under all the evidence, including the written instruments, the trial court considered these items to be a part of the assets purchased by Caton, for which the $11,000.00 purchase price was paid.

It is significant that the items expressly named and held for future "adjustment" included only assets and liabilities requiring an audit for accurate determination

of the amount or value thereof. The cash on hand and prepaid items were not uncertain items, and at the time of the execution of the contract and bill of sale, the total amount thereof was readily available without the necessity of an audit. The phrase "accounts owing and due" used in the contract, and the words "accounts receivable" as used in the bill of sale, were construed by the trial court to include only customers or trade accounts. The accountant, upon whose figures the parties agreed to make final settlement, so construed the language used.

The evidence disclosed that each of the partners had drawn against their share in profits the sum of $4,175.00, or a total of $8,350.00. The profit however was only $7,472.59, resulting in an overdraft for each of the partners of $438.70, which the court properly held to be an obligation "owing and due" the partnership, under the contract, and a part of the "other assets of the business" which Hammond transferred by his bill of sale. No authorities are cited by counsel for Hammond in support of his position.

■ We hold that the construction given by the trial court, to the instruments constituting the dissolution agreement of the parties, was reasonable and consistent with the rule that the language of a contract must be construed in harmony with the plain and generally accepted meaning of the words employed.

■ Assuming, without so deciding, that an uncertainty existed from the language employed in the said instruments as to whether the parties intended the result claimed by Hammond, there was evidence, other than the instruments, introduced without objection, tending to establish the intent of the parties as contended by Caton. We said in *Chase, Admr. v. Collins,* 75 Colo. 156, 225 Pac. 255, where ambiguity admittedly existed in the language of the contract there under consideration: "In the construction of contracts, it is elementary that the intent of the parties should govern,

and any evidence showing such intent is highly important."

We cannot say, as a matter of law, that the trial court erred in finding the facts in accordance with Caton's contention.

The judgment is accordingly affirmed.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE JACKSON concur.