266 P.2d 674

## MOORE v. FREEMAN et al.
### No. 5688.

Supreme Court of New Mexico.

Feb. 5, 1954.

Bert E. Newland, Deming, H. Vearle Payne, Lordsburg, J. Norman Hodges, Silver City, for appellants.

Garland & Sanders, Las Cruces, for appellee.

McGHEE, Chief Justice.

Appeal is brought from the decision of the lower court in action for declaratory judgment that certain funds aggregating to the sum of $4,514 belonged to the seller of an automobile agency and garage under the following contract provision:

"VI. As part of the consideration for transfer of said stock ownership by Seller to Buyers, Buyers further agree to assign by proper instrument to the Seller, all accounts receivable owing to said corporation up to and including August 4, 1951, which accounts shall be considered the property of the Seller."

The case arose upon the following facts: On August 3, 1951, the plaintiff, J. C. Moore (appellee), was the sole stockholder of the Border Motor Company, Inc., a corporation doing business at Deming, New Mexico, operating a garage for the sale and service of Ford automobiles. Upon that date the plaintiff executed a contract of sale with William R. Freeman and Arthur S. Walder, defendants (appellants), which provided the seller would sell the stock of the corporation to the defendants for the sum of $45,000 payable in installments. The buyers were to take possession on August 5th following, and they were to convey to the seller all used cars except the shop car, all secondhand automobile parts, junk and other salvage on the junk yard. The seller was to have the bank account except for enough money to cover outstanding checks; the buyers were to pay the seller $800 to cover an order of parts

paid for by the seller, but not yet delivered; and, as set out above, the buyers were to assign to the seller all accounts receivable up to and including August 4, 1951. In addition, the contract provided:

"IV. It is further agreed that the Seller shall and will assume all indebtedness of the Border Motor Company, Inc., which exists as of the time of transfer of stock ownership in said corporation and the said Seller agrees to indemnify and hold harmless said corporation from any and all indebtedness for merchandise received by said corporation prior to August 5, 1951, but shall not be liable for any accounts owing by said corporation for merchandise received upon receipt of same from the Ford Motor Company.

\* \* \* \* \* \*

"VII. It is understood and agreed by the parties hereto that all property of said corporation including merchandise, stock in trade, parts, accessories, oil, grease, new cars, Good Will, and all other property whatsoever owned by the Border Motor Company, Inc., except that reserved to be expressly conveyed to (Seller) shall be retained by said corporation and become the property of the Buyers as purchasers of the stock of said corporation."

At the time of the execution of this contract, the corporation owned three certain funds, namely: a finance company reserve with Universal C. I. T. Corporation of $3,594; a dealer's deposit with Ford Motor Company of $570; a dealer's incentive fund with Ford Motor Company of $350.

The first of these funds arises from the company financing the purchase of automobiles being given a certain percentage of the finance charge. Such amounts accrue with the finance company to serve as a guarantee against losses arising out of the contracts of sale or the repossession of automobiles which might be suffered by the finance company. When no contracts were outstanding the reserve would be returned to the automobile agency. Otherwise, the fund would fluctuate on a percentage basis with the number of outstanding contracts.

The second of the funds, the dealer's deposit fund with Ford Motor Company, arises from a sum being added to the price of each car purchased by the dealer from the Ford Motor Company, the charge varying according to the value of the car, generally being $15 or $20 per car. These sums accumulate during the year and are returned to the dealer near the end of the year in order to provide him with revenues with which to pay income taxes or other pressing accounts.

The third fund, the dealer's incentive fund, represents a percentage of receipts paid to a dealer for Ford automotive parts

sold by him to other garages or dealers for resale.

Each of these funds was carried in the name of Border Motor Company, Inc., and the defendants have received payment of them.

The contract contained no specific mention of these funds and no discussion was had regarding them in the negotiations between the contracting parties. However, the funds were listed as assets under various captions on the monthly financial statement submitted to the Ford Motor Company on its form, a copy of which was introduced in evidence as Exhibit A. This statement was examined by the defendants during the negotiations, and they attach considerable significance to it. On it the finance company reserve is carried under "Total Fixed Assets"; the dealer's deposit with Ford Motor Company is carried under "Deposits —Ford Motor Company"; and the dealer's incentive fund is carried under "Wholesale Compensation Receivable—Ford Motor Company". On the financial statement there is a listing for accounts receivable, however, the funds here involved were not listed thereunder.

Generally it is the contention of the defendants such funds were to be the property of the Border Motor Company, Inc., under paragraph VII of the contract, set out above; while the plaintiff maintains, and the trial court ruled, the funds belong to him under paragraph VI of the contract, also set out above.

The trial court found the execution of the contract as aforesaid, and found that the defendants had received payment of the funds in question without right or authority or consent of the plaintiff; that the plaintiff was the owner thereof and entitled to recover said sums from the defendants. Finding of Fact No. 9 is as follows:

"That the plaintiff is entitled to a declaration of his rights by this Court in and to the Dealer's Reserve Fund, the Dealer's Deposit, and the Dealer's Incentive Fund and the Court expressly finds that each and all of said funds are, and were as of the date that the contract was entered into between plaintiff and defendants, accounts receivable and each and all of said funds are the property of the plaintiff, without right, title, or interest of the defendants therein; the Court also finding that it was the intention of both plaintiff and defendants at the time of the execution of the contract between said parties and at all other times material hereto that each and all said funds be considered accounts receivable as contemplated by the parties and by said contract and that the same be the property of the plaintiff."

Defendants have set up three points on this appeal: (1) That the term "accounts

receivable" as used in commercial transactions means an open book account owed to the seller by a customer for goods, wares and merchandise purchased, or for services rendered, usually due in the month following the transaction and not evidenced by a note or other written agreement; that the accounts in question are not accounts receivable within this definition. (2) That the term "accounts receivable" should be interpreted in the light of the circumstances surrounding the transaction, and the intention and understanding of the parties should be considered. (3) That the term "accounts receivable" should be strictly construed against the plaintiff as the contract was drawn by his attorney. In the view we take of the case the first two points are allied and will be treated together under the determination whether there is substantial evidence to support the finding of the trial court it was the intention of the parties that the funds in dispute be considered accounts receivable and were to be the property of the plaintiff.

■ The plaintiff testified the various funds were not specifically mentioned in the contract because he considered them to be accounts receivable, and that it is standard procedure in the automobile business to carry and consider such items as accounts receivable. The witness, Jimmy Steven, testified he had had thirty years' experience in accounting and bookkeeping for automobile retail dealers, and eight years' experience with Ford agencies, although not as a registered or certified public accountant. He testified he was familiar with the dealer's deposit fund and the dealer's wholesale incentive fund; that these funds are considered to be accounts receivable from the Ford Motor Company, and that a reserve fund set up with a finance company is considered as an account receivable deferred. The witness, E. F. Adams, an accountant testifying for the defendants, stated the items under consideration constituted open accounts, as that term is defined in Heron v. Gaylor, 1942, 46 N.M. 230, 126 P.2d 295, 296, which opinion quotes the definition found in 1 Am.Jur. (Accounts and Accounting) § 3, p. 265, as follows:

"'The term "open account" means, ordinarily, an account based upon running or concurrent dealings between the parties which has not been closed, settled, or stated, and in which the inclusion of further dealings between the parties is contemplated.' * * *"

While it is true the witness Adams testified he would never of his own volition handle such items under the designation "accounts receivable" and his testimony generally indicates he would limit the term to that definition contended for by defendants; yet we are of opinion the foregoing testimony is sufficient basis for the finding of the trial court it was the intention of the parties to treat such items as accounts receivable, dis-

regarding, as we must, testimony inconsistent therewith.

In addition, certain provisions of the contract are persuasive such was the intention. The seller contracted he would assume all indebtedness of the company existing as of the time of transfer of his stock ownership; that he would save the company harmless from all indebtedness for merchandise received by it prior to the transfer, but that he would not be liable for merchandise to be received thereafter. The seller was to have the funds in the checking account of the company, except for enough reserve to cover outstanding checks. The buyers were to pay the seller $800 to cover an order of automobile parts paid for by the seller but not yet delivered. Each of these provisions is indicative the parties contemplated the pre-existing liabilities and accounts were to be sheared away from the business sold as of the date of delivery.

The defendants rely upon a number of cases declaring obligations fixed under contract are not open accounts where attempts have been made to extend causes of action under statutes of limitation. Illustrative of this line of cases are: Cleaveland v. Inter-City Parcel Service, 1937, 22 Cal.App.2d 574, 72 P.2d 179; Lee v. De Forest, 1937, 22 Cal.App.2d 351, 71 P.2d 285; Connor Livestock Co. v. Fisher, 1927, 32 Ariz. 80, 255 P. 996, 57 A.L.R. 196. On the other hand, the plaintiff has presented a number of cases where certain obligations were held to be accounts receivable in instances where recovery of taxes was sought on the ground they were not. Among these cases are the following: National Cash Register Co. v. Evatt, 1945, 145 Ohio St. 597, 62 N.E.2d 327; Haverfield Co. v. Evatt, 1944, 143 Ohio St. 58, 54 N.E.2d 149; Commonwealth v. Beisel, 1940, 338 Pa. 519, 13 A.2d 419, 128 A.L.R. 978; Duke Power Co. v. Hillsborough Tp., Somerset County, 1942, 20 N.J.Misc. 240, 26 A.2d 713; Ronald Press Co. v. Shea, D.C.1939, 27 F.Supp. 857; and West Virginia Pulp & Paper Co. v. Karnes, 1923, 137 Va. 714, 120 S.E. 321. In our opinion these cases have but limited application in a case involving construction of a contract.

Defendants have also cited us to the case of Sadler v. Pure Oil Co., 1934, 172 S.C. 220, 173 S.E. 640, 641. In this case the problem was to determine whether a claim for damages for alleged overcharges in oil sold to a corporate wholesaler belonged to the corporation, or to an individual as an "account receivable" which he had withdrawn from a transfer by him of all the corporate stock. On this point the court declared:

"* * * We may be going somewhat beyond the scope of this appeal in declaring that in no sense can damages for an alleged breach of contract be considered an account receivable. In 1st C.J. 730, it is said that an account receivable is an obligation owing

to a person on open account, and in National Bank of Newport v. National Herkimer County Bank, 225 U.S. [178] at page 184, 32 S.Ct. 633, 56 L.Ed. 1042, it is said that accounts receivable are assets owing on open account. \* \* \* By the itemized statement appearing in the transcript the alleged overcharges were made on sales to Anderson Oil Company, Inc., and not to Sadler individually. The claim for damages remained an asset of that company, and was not included in the reservation of accounts receivable. \* \* \* "

We feel there is no similarity between the funds here involved and the claim for damages involved in the foregoing case.

Also of considerable interest are the cases of Hammond v. Caton, 1949, 121 Colo. 7, 212 P.2d 845, and Foster v. Ypsilanti Sav. Bank, 1941, 299 Mich. 258, 300 N.W. 78. The first of these cases involved construction of a contract provision as follows: "It Is Further Agreed, That all accounts owing and due said Partnership shall be adjusted as of April 18th, A.D. 1946, together with all Taxes, Insurance and other liabilities." It was the claim of one partner selling his interest to the other that under this provision he was entitled to one-half the partnership cash in the bank, one-half the prepaid rent, and prepaid insurance, arguing those items constituted accounts due and owing the partnership. The court held the construction given by the trial court was correct and reasonable, and consistent with the rule the language of a contract must be construed in harmony with the plain and generally accepted meaning of the words employed, but it is important to note the following language of the court respecting the provision and its construction:

"It is significant that the items expressly named and held for future 'adjustment' included only assets and liabilities requiring an audit for accurate determination of the amount or value thereof. The cash on hand and prepaid items were not uncertain items, and at the time of the execution of the contract and bill of sale, the total amount thereof was readily available without the necessity of an audit. The phrase 'accounts owing and due' used in the contract, and the words 'accounts receivable' as used in the bill of sale, were construed by the trial court to include only customers or trade accounts. The accountant, upon whose figures the parties agreed to make final settlement, so construed the language used.

\*  \*  \*  \*  \*  \*

"Assuming, without so deciding, that an uncertainty existed from the language employed in said instruments as to whether the parties intended the result claimed by Hammond, there was evidence, other than the instruments, introduced without objection, tending

to establish the intent of the parties as contended by Caton. We said in Chase v. Collins, 75 Colo. 156, 225 P. 255, where ambiguity admittedly existed in the language of the contract there under consideration:

" 'In the construction of contracts it is elementary that the intent of the parties should govern, and any evidence showing such intent is highly important.' "

Employing the same general rule as to construction of an ambiguous expression in a contract, the court in Foster v. Ypsilanti Savings Bank, supra, held in an action for accounting by holders of participating certificates against a reorganized bank under depositors' agreement where it was argued only "accounts receivable" might be for the "use and benefit" [299 Mich. 258, 300 N.W. 82] of the bank, and that the bank technically had no accounts receivable:

" * * * Clearly as used in the depositors' agreement the expression 'accounts receivable' was intended to include all assets of the bank in the nature of choses in action. * * * "

See the following New Mexico cases involving construction of contracts according to intention of the parties: Fuller v. Crocker, 1940, 44 N.M. 499, 105 P.2d 472; Fancher v. County Com'rs, 1922, 28 N.M. 179, 210 P. 237; Blain v. Staab, 1901, 10 N.M. 743, 65 P. 177.

While the question is not entirely free from doubt, we cannot say as a matter of law the court below is in error in its finding such accounts were accounts receivable, and that such was the intention of the parties. Both the instrument of contract and the testimony adduced upon the trial give substantial support to the determination made.

We have carefully examined the record and are convinced no unfair advantage was taken over defendants in the execution of the contract and there is no basis for invoking a rule of strict construction against the plaintiff on the basis his attorney drew the contract.

The judgment of the lower court should be affirmed, and it is so ordered.

SADLER, COMPTON, LUJAN and SEYMOUR, JJ., concur.