Matter of **PORTSMOUTH NEWSPA-
PERS, Inc., Bankrupt.**
No. 17626.

United States District Court
E. D. Virginia,
Norfolk Division.
Jan. 8, 1958.

Cantor, McMullan & Cantor, Robert Cantor, Richmond, Va., for petitioner.

Leonard G. Karp, Portsmouth, Va., for intervening petitioner.

Worthington, White & Harper, William C. Worthington, Norfolk, Va., for trustee in bankruptcy.

WALTER E. HOFFMAN, District Judge.

The question presented by the petition for review filed herein by Sheldon F. Sackett is essentially confined to a determination of what assets Sackett acquired in the purchase of the assets of the bankrupt estate pursuant to a sealed upset bid submitted to the Referee in Bankruptcy on May 22, 1957, or, stated otherwise, is Sackett entitled to a credit

of $19,038.34 on account of the total purchase price of $125,100?

The sequence of events leading up to the filing of the petition for review is important to note because of the language adopted by the Referee in an order entered on May 23, 1957, prepared by the trustee in bankruptcy.

Following the acquisition of the newspaper known as the "Portsmouth Star" by Norfolk Newspapers, Inc., the City of Portsmouth was without a locally owned and operated newspaper, although Norfolk Newspapers, Inc., continued the publication of Portsmouth editions for the benefit of Portsmouth residents. Certain Portsmouth citizens, believing it to be of benefit to the community and for reasons of their own, organized the now bankrupt corporation and published a newspaper called the "Portsmouth Times". After a period of slightly less than one year the operation was deemed financially unsuccessful and, during the latter part of March, 1957, the newspaper ceased publication and the corporation caused to be executed and recorded a deed of assignment for the benefit of its creditors. The corporate assets were then in process of liquidation by the trustees under the deed of assignment. Arrangements were made for the sale of the physical assets on May 11, 1957, and the trustees under the deed of assignment had obviously expended large sums of money in advertising this sale, thereby stimulating an unusual amount of interest therein.

On May 9, 1957, only two days prior to the scheduled sale, certain creditors filed a petition in involuntary bankruptcy, and an order of general reference was entered referring the matter to the Referee. The following day, May 10, 1957, a creditor filed an application for the appointment of a receiver. In the absence of the Referee the Court entered an order on that date designating P. B. White as receiver but, because of the advantages to be derived from a sale of the assets at public auction on May 11, 1957, the following provision was inserted in said order:

"It further appearing to the Court that considerable sums of money have been expended in advertising, cataloging, tagging and displaying the assets of the debtor preparatory to a sale presently scheduled for May 11, 1957, and for other cogent reasons shown, the Receiver is hereby ordered to proceed to offer for sale to the highest bidder, either by parcel or by lot, at public auction on May 11, 1957, all the physical assets and personal property; such sale to be subject to the final approval of the Bankruptcy Court and also subject to such upset bid as may be made in conformity with such terms and conditions as the Bankruptcy Court shall hereafter determine. A cash deposit of twenty-five per cent (25%) shall be required of the successful bidder, which deposit, along with the assets, shall be held by the Receiver until the further order of the Court."

It should be noted that the Court, in the foregoing order, authorized the receiver to sell "all the physical assets and personal property".

The sale of May 11 was well attended and the bidding was spirited. The accounts receivable were admittedly excluded from the sale and an item of bulk lead brought no bidder. Other items were sold by lot to numerous bidders, the aggregate purchase price of $83,750.95 being in excess of the appraised value. These bids were, of course, subject to upset bids as provided by the order of May 10, 1957.

On May 22, 1957, the corporation was duly adjudicated a bankrupt. On the following day the Referee entered an order reading in part as follows:

"This cause was set down for hearing, on the report of the Receiver asking for confirmation of the sale on May 22, 1957, at 9:30 A.M., at which time, in conformity with the terms and conditions of the Bankruptcy Court, up-set bids had to be filed with a cash deposit of at

least 25%, two up-set bids were received, and opened by the Referee.

"It appearing to the Court that the highest bid received was that of Shelton F. Sackett, in the sum of $125,100.00, for all of the assets of the bankrupt except the accounts receivable, accompanied by money orders and cashier's check in the sum of $33,000.00, as a cash deposit, it is hereby

"Ordered that the sale at public auction be not confirmed, and the upset bid of Shelton F. Sackett, in the sum of $125,100.00, for all of the assets except the accounts receivable, be accepted and confirmed.

"It is further ordered that the Receiver, P. B. White, will not deliver any of the equipment or assets sold until the full amount of $125,100.00 is paid to the Receiver, and this sum shall be paid to the Receiver on or before July 1, 1957, and upon the payment of the full amount of $125,-100.00, to the Receiver, he is to deliver all of the assets, except the accounts receivable, to Shelton F. Sackett, the purchaser."

While the foregoing order was entered by the Referee on May 23, 1957, the evidence conclusively shows that the upset bids were considered at a hearing held on May 22, 1957, at which time Sackett was present with his attorney, Leonard G. Karp, who had also served as counsel for the trustees under the deed of assignment. Also present at the hearing, in addition to the Referee and receiver, were Ben Shulman and his attorney, M. B. Wagenheim; Shulman having submitted a sealed bid in the sum of $104,-000, a figure $21,100 less than that as offered by Sackett, and having predicated his bid on the assumption that it was only for the physical assets of the bankrupt corporation.

The sealed bid filed by Sackett states:

"May 21, 1957.
"Refree in Bankruptcy
 Post Office Building
 Norfolk, Virginia
"Dear Mr. Kyle:

"I am herewith offering as an upset bid the sum of $125,100.00 for all of the assets of the Portsmouth Times, located at 1525 High Street, Portsmouth, Virginia, with the exception of its accounts receivable.

"I am herewith attaching my check in the sum of $33,000.00 as a deposit and the balance is to be paid July 1, 1957.
                    "Yours very truly,
                    Sheldon F. Sackett
"LGK:dps"

In the handwriting of the Referee at the bottom of the foregoing letter appears the following:

"Upset: This offer accepted as an upset bid
                    W. E. Kyle
                    Referee
        The offer here for the assets of
        Portsmouth Newspapers, Inc.
        T/A Portsmouth Times
                    W. E. Kyle
                    May 22, 1957.
        "$33,000.00 certified checks and Western Union M. O.
        turned over to Receiver."

---

It is conceded by all parties that, at the time of the receipt of the sealed upset bids on May 22, no mention was made with respect to the purchase or acquisition of cash deposits in bank, escrow accounts, or funds collected by the trustees under the deed of assignment since the date of the recordation of the deed. The trustees actually collected $40,156.91 during this period, of which amount $11,-562.81 was collected by attorney Karp, as counsel for the trustees, on May 13,

1957; same representing a deposit in the sum of $11,350, plus interest accrued in the sum of $212.81, made by the corporation in the Merchants & Farmers Bank as security for any indebtedness due the Associated Press for its services to the operating newspaper. On May 7, 1957, prior to bankruptcy, the trustees had forwarded to the Associated Press the sum of $910.79 in full payment of the corporate account to the end that the escrow account could be released. After paying the expenses of the trustees, as well as $18,294.61 to the Director of Internal Revenue for taxes, the remaining balance of $18,447.40 was paid to P. B. White, Receiver in Bankruptcy, by check dated May 17, 1957, but delivered to White on May 22 following the hearing on the consideration of upset bids. Attorney Karp, it will be seen, represented Sackett at the time of the submission of the upset bid.

Sackett now contends that he purchased "all of the assets except the accounts receivable" of the bankrupt corporation, and is therefore entitled to a credit of $18,447.40, plus $590.94 on deposit in a Portsmouth bank, to be applied on account of his purchase price of $125,100. He relies upon the wording of the Referee's order of May 23, 1957, and Sackett's written offer of May 21, 1957, wherein "all of the assets except the accounts receivable" were sold to him. He overlooks the fact that his offer of May 21 refers to an *upset* bid, as does the order of the Referee, and he asks the Court to exclude parol evidence showing the intention of the parties.

Petitioner was not entirely ignorant of what transpired at the public auction on May 11. A representative of his was present at the sale and was the successful bidder on one lot in the sum of $3,000, which amount was used as an addition to his deposit of $33,000 made on May 22, making a total deposit of $36,000. In due time White was elected trustee in bankruptcy and Sackett's actions thereafter manifestly point to the fact that he was under no illusions as to what he

had purchased. On July 1, 1957, in compliance with the order of the Referee, Sackett delivered two checks to White; one in the sum of $30,100; the other in the sum of $59,000. If both of these checks had cleared the bank, the entire purchase price of $125,100 would have been paid. Even at that time Sackett made no claim that he was entitled to a credit for cash deposits in bank, escrow accounts, or funds collected by the trustees under the deed of assignment. The check for $30,100 cleared the bank, but the one for $59,000 was returned marked "not sufficient funds". By order entered July 8, 1957, Sackett was ordered to pay an aggregate sum equivalent to $100,000 of said purchase price on or before July 10, 1957, and the balance of $25,100 on or before July 15, 1957. On July 10, 1957, Sackett delivered to White in cash and certified checks the sum of $38,723.-90, making a total payment of $104,823.-90 on account of said purchase price. Even at this late date nothing was said by the parties tending to show that Sackett was entitled to any credit for the cash deposits, escrow funds, and monies collected by the trustees under the deed of assignment.

Sackett took possession of the physical assets of the bankrupt immediately after the checks were delivered to White on July 1, 1957. His present attorneys interviewed the trustee in bankruptcy on some date between July 10 and July 16 and, for the first time, White was then informed that Sackett was claiming a credit for the items heretofore mentioned. On July 16, 1957, Sackett filed his petition for review, whereupon the Court entered an order suspending the execution and enforcement of the order of July 8, 1957, pending this review, but requiring Sackett to execute bonds in specified amounts depending upon whether Sackett desired to retain or regain possession of the physical assets.

■■ It is abundantly clear from the foregoing facts that parol evidence is proper to show the true intention of the parties. By agreement of counsel, sub-

ject to petitioner's objection as to introduction of parol evidence, this Court heard the testimony of the witnesses. Sackett, although granted an opportunity to testify in person or by deposition, elected to remain silent. In fact, among the grounds for review as asserted by petitioner is the following language referring to the orders of May 23, 1957, and July 8, 1957:

"(b) That said order did not specify in detail with sufficient clarity, the assets sold, as a result of which a controversy has arisen between your petitioner and P. B. White, Trustee in Bankruptcy herein as will hereinafter be set forth."

If petitioner is now to be heard upon the foregoing point, it is necessary to receive parol evidence. All of the events leading up to the submission of upset bids are so interwoven with the public auction sale of May 11 as to require an examination of the entire proceedings as well as the actions of the parties. At the public auction on May 11, the receiver was authorized to sell "all the physical assets and personal property". At the time of this sale the accounts receivable were specifically excluded and, of course, the receiver then had no knowledge as to the intangible assets in the hands of the trustees under the deed of assignment. When the upset bids were submitted, the bidders were on notice with respect to the Court's order of May 10. An upset bid relates back to the facts surrounding the original sale unless there is affirmative evidence of a new and different understanding between the parties. The introduction of parol evidence is clearly proper under the doctrine of Young v. Schriner, 190 Va. 374, 57 S.E.2d 33, 35, wherein the contract provided that the buyer would pay "the bal. oweing on the property", and a controversy arose as to whether the buyer had to pay two bank loans which were not liens upon the property. The lower court excluded seller's parol evidence as to what the parties intended to be included within the quoted phrase, and the appellate court reversed, saying:

"It is elementary that where the terms of a contract are thus susceptible of more than one interpretation, or an ambiguity exists, or the extent and object of the contract cannot be ascertained from the language employed, 'parol evidence may be introduced to show what was in the minds of the parties at the time of making the contract and to determine the object on which it was designed to operate.' "

Even more cogent are the reasons for applying this rule to a judicial sale in bankruptcy where the parties do not enter into a formal sales agreement.

The able briefs of counsel for petitioner cite many cases illustrating the exclusion of parol evidence in contractual matters. While they are persuasive in argument, they are not controlling with respect to the applicable facts of this case. When we read this Court's order of May 10, petitioner's upset bid of May 21, and the Referee's order of May 23, the extent and object of the understanding between the parties cannot be ascertained from the language, and parol evidence is proper to show what was in the minds of the parties. When such parol evidence and subsequent acts of the parties clearly establish the intent, as in this case, petitioner is not entitled to any credit on his purchase price. Obviously the parties intended that Sackett was to acquire all the physical assets as a whole which would, by inference, include the transfer of goodwill.

From a practical standpoint petitioner is in the position of one who has paid the entire purchase price and now institutes an action against the trustee to recover back a portion of the purchase price. If the checks delivered to White on July 1, 1957, had cleared, petitioner would be in that status. He cannot now benefit by the technical wording of an order which he likewise admits to lack clarity.

By reason of the foregoing it becomes unnecessary to consider the trustee's mo-

tion to correct and reform the order of the Referee entered on May 23, 1957. Petitioner insists that if the order is reformed or corrected, petitioner must be accorded the right to withdraw his offer and obtain a refund of the amounts paid on account of the purchase price. While there may be merit to the trustee's position under the authority of In re Crosby Stores, Inc., 2 Cir., 65 F.2d 360; In re Pottasch Bros. Co., 2 Cir., 79 F.2d 613, 101 A.L.R. 1182, and Slocum v. Edwards, 2 Cir., 168 F.2d 627, it is not required in this case by reason of admissibility of parol evidence. Furthermore, petitioner would not be entitled to rescind in the absence of fraud or mistake which does not exist in this case.

■ In the final analysis, aside from the item of $590.94 cash in bank, it would be difficult for petitioner to, prevail in. any event. Excluding the escrow account deposited in bank as security for the services of the Associated Press, the balance of the collections by the trustees under the deed of assignment were from accounts receivable and payroll tax accounts. The accounts receivable were admittedly excluded. The payments to the Director of Internal Revenue by the trustees prior to bankruptcy far exceeded the receipts. We are confronted, therefore, with the status of the Associated Press escrow deposit in the sum of $11,-350, against which the trustees were required to pay $910.79 to secure its release. In the strict accounting sense, this item is not an "account receivable", as it was carried on the balance sheet as a special deposit under "other assets". Here, again, we must consider parol evidence to look to the intention of the parties and the petitioner invoked this privilege in presenting the testimony of a certified public accountant. The ques-tion is sufficiently answered in Moore v. Freeman, 58 N.M. 139, 266 P.2d 674, 41 A.L.R.2d 1388, wherein the court had for consideration the status of three funds maintained by an automobile dealer, namely, a finance company reserve account, a dealer's deposit with the Ford Motor Company returnable to the dealer at the end of each year in order to pay income taxes, and a dealer's incentive fund. Under the contractual arrangement, the seller retained the "accounts receivable" and the buyer acquired "all other property whatsoever" owned by the corporation. The Court held, under the parol evidence admitted, that the three special funds were properly considered as "accounts receivable". The similarity of these three funds to the escrow deposit as security for the account of the Associated Press in the instant proceeding is controlling.

The remaining points in the petition for review are without merit and were practically abandoned by petitioner at the time of argument.

An order will be entered denying the petition for review and affirming the orders of the Referee in Bankruptcy heretofore entered on May 23, 1957, and July 8, 1957. Petitioner will be charged with the costs of the bankrupt estate incurred pursuant to the order of this Court heretofore entered on July 16, 1957, but shall not be charged with interest on the balance of the purchase price except from and after a period of ten days from the date of the entry of the proposed order, as the Court is of the opinion that a full hearing on the merits should have been conducted before the Referee which, in turn, may have eliminated the necessity of a review. Counsel for the trustee will present an appropriate order after endorsement by counsel for petitioner.