In the Matter of **VARNEY WOOD PRODUCTS, INC., Bankrupt.**

**GIRARD TRUST COMPANY, Appellant,**

v.

**J. Glenwood STRICKLER, Trustee in Bankruptcy for Varney Wood Products, Inc., Appellee.**

No. 71-1722.

United States Court of Appeals, Fourth Circuit.

April 6, 1972.

B. Purnell Eggleston, David C. Hjortsberg, Roanoke, Va., and J. B. Justice, Philadelphia, Pa., on brief for appellant.

Paul S. Barbery, Roanoke, Va., on brief for appellee.

Before WINTER, CRAVEN and BUTZNER, Circuit Judges.

WINTER, Circuit Judge:

Girard Trust Bank (Girard) appeals from an order of the district court, 327 F.Supp. 425, denying its claim to the proceeds of a contract between Varney Wood Products, Inc. (Varney) and the West Virginia Economic Opportunity Agency (EOA). The sole issue on appeal is whether a financing statement, filed by Girard and describing the collateral as "accounts receivable," was sufficient to perfect a security interest in the proceeds of the EOA contract. The question comes before us on Girard's motion for summary reversal of the order of the district court deciding that it had no security interest and the response of the trustee in bankruptcy for Varney. We conclude to grant the motion and reverse the order of the district court.

The facts are not in dispute. On March 7, 1966, under an instrument entitled "Loan Agreement, Accounts Receivable—Monies Due Under Contracts," Smith-Turner Wood Products, Inc. (now Varney) granted to Girard Trust Corn Exchange Bank (now Girard) a security interest in:

(a) All accounts owned by Borrower on the date of this agreement;

(b) All accounts at any time hereafter acquired by Borrower;

(c) Such contract rights as Borrower may from time to time specifically assign to Bank; and

(d) All proceeds of such accounts and contract rights.

The agreement defined "account" as ". . . a right to payment for goods sold or leased or for services rendered, and includ[ing] a right to payment which had been earned under contract right." Girard duly recorded and filed a financing statement describing the items of collateral as "accounts receivable." During all of the steps of the transaction and thereafter, the Uniform Commercial Code (the "code" or "U.C.C.") had been adopted as the law of Virginia.

Approximately two years after the loan agreement was made, Varney executed a written contract with EOA. Varney agreed to provide on-the-job training for twenty trainees selected from the ranks of the unemployed in West Virginia in return for $4,500.00, to be paid upon the completion of the program in August, of 1968. Only $3,120.00 actually became due Varney, however, since some of the trainees did not remain long enough to qualify under the terms of the contract.

On September 4, 1968, Varney filed its petition in bankruptcy under Chapter XI and was adjudicated a bankrupt on September 10, 1968. The referee in bankruptcy ordered the trustee to pay to Girard the proceeds of the "bankrupt's accounts" which Girard collected. Subsequently, the trustee collected the $3,120.00 that was due Varney on the EOA contract.

On October 29, 1969, Girard filed a petition with the referee claiming that it had a perfected security interest in the proceeds of the EOA account collected by the trustee. The referee denied the petition, ruling that the description of the collateral appearing in Girard's financing statement—Accounts Receivable—was inadequate to perfect a security interest in the proceeds of the EOA contract. The district court, relying on West Virginia Pulp and Paper Co. v. Karnes, 137 Va. 714, 120 S.E. 321 (1923), sustained the referee's decision on the grounds that the term "accounts receivable" did not reasonably identify the collateral. The court noted that while the term "accounts" would reasonably have identified Girard's right to payment under the EOA contract, under applicable state law "the more narrow term accounts receivable . . . [was] not inclusive of the term accounts, as broadly defined in the Code."

We believe the district court erred in resting its decision on the technical definition of "accounts receivable" as set forth in dicta in *Karnes*, a 1923 pre-code tax case. The code has rejected "exact and detailed" descriptions in favor of those which reasonably identify

what is described. Va.Code Ann. § 8.9–110 and Comment. Furthermore, the code has adopted a system of "notice filing" which contemplates further inquiry in order to determine whether a given asset is covered by a security agreement. Va.Code Ann. § 8.9–402 and Comment. All that is required under the code, then, is that the financing statement be sufficiently descriptive so as reasonably to generate further. inquiry. Given this standard we believe that the description of the collateral in Girard's financing statement was sufficient to perfect Girard's security interest in the EOA contract.

It is clear that the term "account" would have adequately described the EOA contract. The code does not define "accounts receivable," but in the official comments to the code "accounts" is defined as the "ordinary commercial account receivable." [1] Va.Code Ann. § 8.9–106, Comment. The " 'Official Comments' of the Code are, of course, not binding on [this] court, . . . but they do represent powerful dicta." In re Yale Express System, Inc., 370 F.2d 433, 437 (2 Cir. 1966); see Thompson v. United States, 408 F.2d 1075 (8 Cir. 1969); Kassab v. Central Soya, 432 Pa. 217, 246 A.2d 848 (1968). We need not decide whether the definition in the Official Comments is the proper technical definition, but only whether "accounts receivable" is an adequate description of the EOA contract within the context of the code's system of notice filing. We conclude that the use of the term is reasonably descriptive since anyone going to the code and comments for guidance, be he creditor, debtor, or third party, would be given the definition of "accounts receivable" as advocated by Girard. Even if this is not the exact technical definition of "accounts receivable" as heretofore used by the Virginia courts, a person operating within the code's framework would be on notice that this term could be used to describe a given item of collateral such as the right of payment under the EOA contract.

An examination of the purposes and policies behind the code lends additional support to our holding. One of the stated objectives of the code is to promote uniformity of law among the various jurisdictions.[2] Va.Code Ann. § 8.1–102 (2) (c). Obviously, this objective would be frustrated if each jurisdiction relied solely on its pre-code law in interpreting the code.[3] Cf. Thompson Maple Products v. Citizens National Bank, 211 Pa.Super. 42, 234 A.2d 32 (1967); Lincoln Bank & Trust Co. v. Queeman, 344 S.W.2d 383 (Ky.1961). We note, therefore, that in two other jurisdictions courts have held that security interest in "accounts" were properly perfected by financing statements which described the collateral as "accounts receivable." In re Platt, 257 F.Supp. 478 (E.D.Pa.1966); South County Sand and Gravel Company v. Bituminous Pavers Company, 256 A.2d 514 (R.I.1969). In other cases the terms "accounts" and "accounts receivable" have been used interchangeably. E. g., In re Portland Newspaper Publishing Co., 3 U.C.C.Rep. Serv. 194 (Referee's decision; D.C.Or. 1966), aff'd., 271 F.Supp. 395 (D.C.Or. 1967), aff'd. sub nom., Dubay v. Williams, 417 F.2d 1277 (9 Cir. 1969); In

---

1. There is no Virginia comment to this section.

2. In support of this objective, courts often look to the law of neighboring jurisdictions in interpreting their own code. *See, e. g.,* Silver v. Gulf City Body· & Trailer Works, 432 F.2d 992 (5 Cir. 1970); Needle v. Lasco Industries, Inc., 8 UCC Rep.Serv. 9 (Cal.Ct. of App.1970); A. J.

Armstrong Co. v. Janburt Embroidery Corp., 97 N.J.Super. 246, 234 A.2d 737 (1967).

3. The Supreme Court of Appeals of Virginia has apparently recognized that old precedent would not survive a conflict with the U.C.C. Portsmouth Gas Co. v. Shebar, 209 Va. 250, 253 n. 1, 163 S.E. 2d 205, 208 n. 1 (1968).

re C. E. Pontz & Son, Inc., 2 U.C.C.Rep. Serv. 1120 (Referee's decision, E.D.Pa. 1965). While these cases may not fix the proper definition of "accounts receivable," they unquestionably establish that Girard's use of this term was reasonable, as evidenced by its use in other code jurisdictions.

Finally, we do not believe that the Virginia definition of "accounts receivable" is as clear as suggested by the district court. In at least one Virginia case the term has been held to include an escrow account held in a bank as security for the performance of certain services. In re Portsmouth Newspapers, 157 F.Supp. 640 (E.D.Va.1958). Moreover, commentators have suggested that the term "accounts receivable" as used in pre-code Virginia law was, in fact, more comprehensive than the code's "accounts." *See* Coogan, Relationship of Article 9 of the Uniform Commercial Code to Pre-Code Chattel Security Law, 51 Va.L.Rev. 853 (1965); Note, Effect of the Uniform Commercial Code on Virginia Law, 20 W. & L. L. Rev. 267, 306 (1963); *see also* Coogan, Intangibles as Collateral Under the Uniform Commercial Code, 77 Harv.L.Rev. 997 (1964).

Even if "accounts receivable" is not synonymous with "accounts," we conclude that it is sufficiently descriptive, as witnessed by the definition in the official comments, its use in other jurisdictions, and the analysis of code commentators, to put third parties on notice that a security interest in the EOA contract may be claimed and that further inquiry is necessary. We find no merit in the trustee's contention that the referee made a finding of fact that the EOA account was not contemplated by Girard and Varney when the loan agreement came into existence.

Girard's motion for summary reversal is granted. We dispense with oral argument, and the order of the district court is

Reversed.