**Logue v. The Allen Laundry, Inc.**

*William P. Hogan* and *Hogan and Scott,* for plaintiffs.

*Rudolph Zieger, Jr.,* for defendant.

WIEAND, *J.*, June 29, 1977—This action was commenced as an action in assumpsit to recover installment payments due and to become due under the terms of two stock purchase agreements. Following a pretrial conference it became apparent and counsel agreed that the only issue requiring determination pertained to the meaning of the term "accounts receivable" as used in the purchase agreements. If the court resolved this dispute, it was agreed the parties themselves could apply the formula provided by the agreements in order to determine the amounts of future payments. The action, therefore, proceeded as a petition for declaratory judgment and was heard by the court without a jury.

Mildred R. Logue and Priscilla Malone, plaintiffs, had been stockholders, who together with John Logue, Jr., owned the controlling interest in Homecrest Linen Supply Co., Inc. Mildred Logue, Harold Miller and John Logue, Jr. also owned the controlling stock interests in Homecrest Laundries, Inc. As early as September, 1970, and continuing through December, 1970, John Logue, Jr. had been engaged in discussions with representatives of The Allen Laundry, Inc. concerning a possible purchase by Allen of the Homecrest corporations. On December 29, 1970, before any agreement had been reached, a serious fire occurred which destroyed the business records of the Homecrest corporations and caused serious damage to equipment owned by the corporations, as well as to real estate owned by John Logue, Jr.

In January, 1971, terms were agreed upon for Allen to purchase the shares of stock owned by Mildred Logue, Priscilla Malone, Harold Miller and John Logue, Jr. in the Homecrest corpora-

tions. Written agreements were prepared by Allen's lawyer and reviewed by William Joachim, Esq., an attorney engaged by John Logue, Jr. to represent the interests of the sellers. Accountants for the parties were also consulted, but the destruction of the records of the Homecrest corporations made it impossible to calculate accurately their accounts receivable and accounts payable. Lengthy discussions among the parties and their attorneys on January 19 and 20, 1971, resulted in written stock purchase agreements by which Allen agreed to buy the shares of stock owned by plaintiffs, Harold Miller and John Logue, Jr., who agreed to sell the same to Allen.

The agreement for the purchase of stock in Homecrest Linen Supply Co., Inc. provided, inter alia, as follows:

"1.03. The aggregate purchase price shall be reduced, before or after Closing, to the extent indicated below:

". . .

"(b) The aggregate purchase price shall be reduced by the amount, if any, by which Allen determines that the aggregate liabilities of Homecrest as of Closing, after subtracting cash and accounts receivable of Homecrest, exceed $26,000, provided, however, that to the extent that Allen determines that the aggregate liabilities of Laundries, after subtracting cash and accounts receivable of Laundries, are less than $19,000, no reduction in the purchase price shall be made pursuant to this subsection (b)."

A corresponding provision was contained in the agreement for the sale of stock in Homecrest Laundries, Inc. The purpose of these provisions was to give to Allen a reduction in the total pur-

chase price paid if the liabilities for both corporations, but reduced by "cash and accounts receivable," exceeded $45,000.

It was subsequently determined that the excess of accounts payable over cash and accounts receivable was $71,319.76. Plaintiffs contend, however, that this amount must be reduced by the sum of $26,320 subsequently paid to Allen pursuant to policies of fire insurance in effect and owned by the Homecrest corporations at the time of the fire on December 29, 1970. Defendant denies this, contending that the term "accounts receivable" in paragraph 1.03 was intended to mean trade or customer accounts receivable and did not include a then unliquidated insurance claim for fire loss.

Neither counsels' research nor our own has disclosed a decision of the appellate courts of Pennsylvania which attempts to construe the term "accounts receivable." The general rule, however, can be discerned from an annotation appearing at 41 A.L.R.2d 1395. It is there concluded as follows: "Although there is a paucity of authority dealing with the construction of the term 'accounts receivable,' the cases wherein such question has arisen have construed the term according to the usual rules for the construction of contracts, taking into account extrinsic circumstances. Each case, therefore, must stand upon its own facts." See also: Hammond v. Caton, 121 Colo. 7, 212 P.2d 845 (1949);[1] Sadler v. Pure Oil Co., 172 S.C. 220, 173 S.E. 640 (1934);[2] Guaranty Trust Co. of N.Y. v.

[1] In the Hammond case, the term "accounts receivable" appearing in a bill of sale of partnership assets was construed to include only customers' or trade accounts.

[2] In the Sadler case, a claim for an alleged breach of contract was held not to be an account receivable as that term was used in a transfer of corporate assets.

Williamsport Wire Rope Co., 222 F.2d 416 (3rd Cir. 1955); Nell v. McCrea, 16 D. & C. 2d 555 (1958); Moore v. Freeman, 58 N.M. 139, 266 P.2d 674, 41 A.L.R. 2d 1388 (1954).

Pennsylvania decisions are clear that when the terms of a contract are susceptible of more than one interpretation, or an ambiguity arises, parol evidence is admissible to clarify the ambiguity and to ascertain the intention of the parties: Hankin v. Goodman, 432 Pa. 98, 246 A.2d 658 (1968); Castellucci v. Columbia Gas of Pennsylvania, Inc., 226 Pa. Superior Ct. 288, 310 A.2d 331 (1973). See also: Sum.Pa.Jur. Evidence §382. Parol evidence is particularly appropriate where the ambiguity arises from the use of words which are technical or constitute trade terms: Berke v. Bregman, 406 Pa. 142, 176 A.2d 644 (1962). See also: Sum.Pa.Jur. Evidence §383.

In the instant case, the claims for fire losses had not been liquidated at the time the stock purchase agreements were executed. Proofs of loss had not been filed, and the Homecrest claims had not been adjusted. Notice of the loss, however, had been given to the insurer, and the insurer had advanced moneys to effect a cleanup of the premises. The insurance claims, it was testified, had been discussed by the parties to the stock purchase agreements and it had been thought that they would follow the assets insured. These claims were not deemed accounts receivable and were not considered to be offsets against accounts payable for the purpose of modifying the stock purchase price after closing. This was the testimony of both attorneys who handled the transaction and of John Logue, Jr., who had been in the forefront of the negotiations. Their testimony was not con-

tradicted by plaintiffs. Priscilla Malone was not present during the negotiations on January 19, 1971, and Mildred Logue testified that she did not hear insurance proceeds discussed.

Paragraph 1.03 was included in each stock purchase agreement because the destruction of corporate records prevented the accountants from making an accurate determination of the state of the corporations' business accounts. Allen was concerned that it not purchase corporations whose business accounts, including accounts payable and accounts receivable, would ultimately reflect an adverse balance in excess of that which had been estimated. Paragraph 1.03 was intended to serve as a safety valve and provide a credit against the stock purchase price to the extent that trade accounts payable exceeded and customer accounts receivable were less than estimates included in the agreement. When so considered, the intention of the parties is clear. The insurance claims were treated as an asset in substitution for physical assets which passed with ownership of the corporations. Accounts receivable included only trade or customers' accounts.

## ADJUDICATION

Now, June 29, 1977, after trial without jury, the court adjudicates and declares that the term "accounts receivable" of Homecrest Linen Supply Co., Inc. and Homecrest Laundries, Inc., as used in section 1.03 of the stock purchase agreements which are the subject of this litigation, were intended to refer to trade or customer accounts receivable and did not include unliquidated claims for fire losses recoverable under policies of fire insurance owned by said corporations at the time

when the stock purchase agreements were executed.

This adjudication shall become final unless exceptions are filed within 20 days after notice of this adjudication is given to counsel for the parties.